# UNITED STATES BANKRUPTCY COURT
## for the
## DISTRICT OF MASSACHUSETTS

=======================================
                                                                                                                                                *

In Re:                                                              *

    SANDAB COMMUNICATIONS                * Chapter 11

    LIMITED PARTNERSHIP II,                   * No. 09-19044-WCH

                                                                         *

                                      Debtor                            *

                                                                                  *

=======================================

## MEMORANDUM OF DECISION ON DEBTOR'S OBJECTION TO THE CLAIMS OF STEPHEN M. COLELLA

Stephen N. Colella ("Colella"), a former employee of Sandab Communications Limited Partnership II ("Debtor"), filed a request for payment which he describes as an administrative claim for wages.[1] Debtor objected in part.[2] Colella filed a response to the objection.[3] I held a hearing on September 17, 2010, and directed the parties to file memoranda and relevant affidavits in three weeks.[4] Debtor responded with a memorandum and affidavits.[5] Colella did not comply with the order.

The claim consists of three elements: (1) $18,032.00 as a wage reduction

---

[1] Docket No. 121.

[2] Docket No. 128.

[3] Docket No. 148 ("Response").

[4] Docket No. 150.

[5] Docket No. 160.

1

purportedley held in escrow; (2) $6,867.00 as three weeks's termination pay as provided by Debtor's Employee Handbook; and $191.83 deducted from his wages to pay a child support order.  I will address these in order.

The 10% wage reduction

> Colella asserts that the 10% arose as follows:
>
> On November 18, 2008, Gregory Bone, a Partner and General Manager of the Debtor-Company, held a company-wide meeting of (salaried) employees wherein he announced that all salaries were going to be reduced by 10%. Mr. Bone further represented that the 10% reduction would be held in escrow and returned to all employees at a future time to be determined.[6]
>
> Debtor's interpretation of that meeting differs somewhat from Colella's:
>
> Debtor held a meeting with its salaried employees at which it announced that it had to further trim overhead which, by that point, it could only do by reducing staff or implementing a wage reduction of 10% which reduction would not require staff reductions.  The consensus at the meeting was to accept the wage reductions rather than eliminate staff.  The Debtor did not promise to hold any monies in escrow, but stated that it would try to take up the wage reduction at some future point should the financial situation of the Debtor improve.  The Debtor made no promise to hold any money in escrow. An escrow scheme would not have resulted in any overhead savings.[7]

This position is supported by the affidavits of Troy Smith, Production Director, Wayne W. White, Operations Director, and Dennis K. Hanley, Chief Financial Officer, all of whom were present at the meeting.[8]

In his response, Colella appears to acknowledge the tentative nature of the promise to make up the 10% reduction by quoting the language of the Objection that Debtor "would

---

[6] Colella Affidavit, Docket No. 121, Exhibit A ("Colella Affidavit"), ¶3.

[7] Docket No. 128 ("Objection"), ¶3.

[8] Docket No. 160.

try to make up the wage reduction at some future point should the financial situation of the Debtor improve,"[9] even though he asserts that he had "the expectation that the deferred wages would be paid at a future date."[10]

This response certainly dilutes the claim that an escrow was to be created. As Debtor points out, paying the wages into an escrow would not improve its cash flow. I find that the objection to this portion of Colella's claim is well taken and it will be sustained.

Termination pay

Debtor has no objection to the termination pay portion of Colella's claim ($6,867.00) which is consistent with Debtor's usual policy[11] and an administrative claim will be allowed in that amount.

The Child Support Order

Colella contends that $191.83 was paid out of his wages "when he was no longer collecting wages."[12] Debtor responds that it actually deducted and sent to the beneficiary of an Order for Support issued by the Barnstable Probate & Family Court the sum of $335.00. Debtor provided me with its computation of how that amount was arrived at and a copy of the Order for Support.[13] Other than the cursory statement quoted, Colella did not attempt to justify this claim. The objection is sustained.

---

[9] Response, ¶3.

[10] Response, ¶4.

[11] Objection, ¶4.

[12] Docket No. 121.

[13] Objection, ¶5 and Exhibit A.

## Conclusion

For the reasons stated, the Objection to Colella's claim is sustained. Colella is awarded an administrative claim in the amount of $6,867.00.

*[signature: William C. Hillman]*

_____
William C. Hillman
United States Bankruptcy Judge

Dated: October 19, 2010